IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| U.S. Specialty Insurance Company, § § Plaintiff, § § v. § Gartner Group, Inc., § § Defendant. § § | § § § § § Civil Action No. 4:20-cv-1851 § § § § § |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff U.S. Specialty Insurance Company ("USSIC") files this Complaint for Declaratory Judgment against Defendant Gartner Group, Inc. ("Gartner") and alleges as follows:

**INTRODUCTION**

1.  This insurance coverage dispute concerns the parties' rights and obligations under an event cancellation policy, Policy No. U-19/7000957 (the "Policy"),[1] issued by USSIC to Gartner. USSIC has confirmed acceptance of claims that potentially exhaust the Policy's Aggregate Limit of Indemnity of "$20,000,000 in all." Gartner, which represents that it may have suffered losses in excess of this amount due to the COVID-19 global pandemic, takes the position that it has the right to coverage in excess of the Policy's Aggregate Limit of Indemnity to recover for those losses. However, the Policy does not entitle Gartner to increase Limits of Indemnity arising from a circumstance already known to the insured at the time it requests such an increase. Gartner also takes the position that it can add coverage for new events under the Policy that Gartner scheduled after the Policy became effective and that it can increase the Limit of Indemnity for certain events that Gartner states are recurring shows. However, the Policy does not entitle Gartner

---

[1] The Policy is attached to this Complaint for Declaratory Judgment as Exhibit A.

to add events or increase coverage for events for a known risk, here, the COVID-19 global pandemic.

2. Gartner is a global research and advisory company that, among other activities, organizes and stages events and conferences at numerous locations throughout the world. The Policy includes a Schedule of Events (the "Original Schedule of Events"), which specifically identifies the events it covers and the Limit of Indemnity for each event. The covered events are scheduled from June 18, 2019, through June 13, 2020. The Original Schedule of Events indicates that the value of the covered events exceeds $58,000,000—well in excess of the Policy's Aggregate Limit of Indemnity.

3. USSIC has honored its obligations under the Policy and accepted claims that could exceed $20,000,000, the Policy's Aggregate Limit of Indemnity for the term of the policy, subject to a full coverage review when Gartner provides further documentation. But no provision of the Policy entitles Gartner to increase the Aggregate Limit of Indemnity to recover for losses resulting from a circumstance already known to the insured, such as the COVID-19 global pandemic. Further, although the Policy permits Gartner to secure additional coverage in some circumstances, the Policy does not permit Gartner to secure additional coverage where, prior to inception of that coverage, Gartner was aware of circumstances—such as the COVID-19 global pandemic—that may lead to a claim. Similarly, the Policy does not permit Gartner to increase the Limits of Indemnity for Recurring Shows where Gartner is aware of circumstances that may lead to a claim. Indeed, permitting Gartner to obtain increased coverage for additional COVID-19 losses would be against public policy and violate the well-established fortuity doctrine.

4. In this action, USSIC seeks a determination that Gartner is not entitled to payment of claims for COVID-19 related losses in excess of $20,000,000, the Policy's Aggregate Limit of

Indemnity. Alternatively, USSIC seeks a determination that Gartner cannot increase Limits of Indemnity for COVID-19 related losses by seeking to reinstate or increase the Limit of Indemnity for Recurring Shows. Further, USSIC seeks a determination that Gartner cannot now obtain coverage for COVID-19 related losses for new events not previously covered under the Policy.

## THE PARTIES

5. Plaintiff USSIC is a specialty insurance group that issued an event cancellation insurance policy to Gartner. USSIC is incorporated in Texas, and its principal place of business is in Houston, Texas.

6. Defendant Gartner is incorporated in Delaware and its principal place of business is in Stamford, Connecticut. Gartner may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## JURISDICTION AND VENUE

7. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and 2201 because USSIC is neither incorporated in nor has its principal place of business in the same state as Gartner, and USSIC seeks a declaratory judgment determining the parties' respective rights and obligations with regards to an amount in controversy exceeding $75,000.

8. Venue is proper under 28 U.S.C. § 1391 because Gartner maintains an office in this district at 11490 Westheimer Road, Suite 240, Houston, Texas 77077.

## FACTUAL ALLEGATIONS

**I.      Gartner Obtained Event Cancellation Insurance**

9.      Gartner is a global research and advisory company that serves 15,600 client organizations throughout the world. Each year, Gartner organizes multiple events and conferences related to human resources, information technology, legal, marketing, and sales. In 2019, Gartner reported that its conference business segment had a revenue growth of 18% with a conference attendance growth of 8%.

10.     Initially, Gartner obtained a single loss limit event cancellation policy from USSIC, which included coverage for all of Gartner's events. In April 2019, Gartner inquired about a second loss limit event cancellation policy, which would only cover events with anticipated revenue below $1 million. Gartner wanted a separate policy for these smaller events because they were marketed under a different brand name (Evanta) than its larger events. USSIC issued the Policy effective June 15, 2019, through December 31, 2020, to cover these smaller events, which were specifically identified in the Original Schedule of Events. This schedule included the Limits of Indemnity for each individual event.

11.     On March 2, 2020, Gartner provided USSIC with a new Schedule of Events, which included all Evanta-branded Shows that Gartner intended to host through December 31, 2020 ("2020 Schedule of Events"). The 2020 Schedule of Events includes new events, which were not included on the Original Schedule of Events. It also includes 2020 dates for shows that Gartner states are recurring shows, which were identified by their 2019 dates on the Original Schedule of Events. The 2020 Schedule of Events seeks increased Limits of Indemnity for the majority of these shows.

**II.     The COVID-19 Pandemic Triggered Widespread Cancellations of Events**

12.     Due to the COVID-19 pandemic, Gartner already has cancelled or postponed at least 64 of the 134 shows scheduled for 2020. USSIC preliminarily has accepted coverage for the Shows cancelled or postponed on the Original Schedule of Events, due to the COVID-19 pandemic, through June 2020, subject to a full coverage review when the documentation is received, up to the Policy's Aggregate Limit of Indemnity. The precise amount of proceeds to which Gartner is entitled for the events that have been cancelled is uncertain because Gartner has not provided USSIC or its adjuster with information that would permit USSIC to assess indemnity, even preliminarily. However, USSIC expects that figure to reach $20,000,000, the Aggregate Limit of Indemnity.

**III.    The Policy**

    **A.  Coverage Provision**

13.     **Insuring Agreement.** Section I of the Policy (Show Cancellation) provides, in relevant part, that "[t]his insurance indemnifies the Insured against any loss occurring subsequent to the Effective Date and causing the unavoidable . . . Cancellation, Curtailment, Postponement, Interruption, Relocation/Removal to Alternative Premises, or Abandonment of a Show."

14.     The Policy defines all of these covered events to mean "the inability of the Insured to open, keep open, or otherwise maintain the Show in whole or in part for its intent, scope and duration."

15.     The Policy identifies the Shows for the policy period as those set forth in the Schedule of Events attached to the Policy.

    **B.  Limits**

16.     The Policy includes the following provisions addressing the Policy limits:

17. **Aggregate Limit of Indemnity**: "$20,000,000 in all"

18. **Limit of Indemnity.** Defined in the Policy as "[u]p to but not exceeding the Limit of Indemnity for each Show as stated in Item No. 7 below, *subject to the Aggregate Limit of Indemnity* as stated in Item No. 8." (emphasis added). The Schedule of Events, in turn, identifies a Limit of Indemnity per Show.

19. **Increase in Limits of Indemnity.** Section 9 of the General Conditions and Warranties (Increase in Limits of Indemnity/Under-Insurance Clause) provides:

> It is understood and agreed that the Aggregate Limit of Indemnity is a loss limit and may not be sufficient to cover the aggregate value of all Shows. At any time prior to commencement of a Show or Shows the Insured can apply in writing for increased indemnity limits based upon revised financial estimates of Gross Revenues, Expenses or Commitments, provided that there is no circumstance(s) known by the insured which may give rise to a claim with respect to such Show or Shows declared to this insurance. Insured as used herein means the Risk Manager, CEO, CFO or General Counsel of the Named Insured. It is understood and agreed that if Gross Revenue, Expenses or Commitments for any one, several or all Shows as per Item 7 of the Declarations increases in value by a factor of 10% there will be no change in premium and the Limit of Indemnity for any one, several or all Shows as per item 7 of the Declarations automatically increase accordingly. It is further agreed that any such change in value will automatically cause an increase in the Aggregate Limit of Indemnity as evidenced by Item 8 on the Declarations page.

20. **Reinstatement of Limits.** Section 12 of the General Conditions and Warranties (Reinstatement of Original Limit of Liability) provides:

> This insurance is extended to cover a Show if it is Cancelled, Abandoned, Postponed, Interrupted, Curtailed or Relocated. The Company agrees to reinstate that part of the Limit of Indemnity shown in the Schedule utilized by way of any potential or actual loss payment under this insurance at the sole option of the Insured. If the Insured opts to reinstate the Limit of Indemnity then the additional premium payable is calculated at 100% of the original premium multiplied by that portion of the Limit of Indemnity reinstated. Furthermore, if the Limit of Indemnity reinstated exceeds the ultimate settled loss then the Company agrees to a return premium for the difference calculated in accordance with the foregoing. The maximum amount that can be reinstated shall not exceed $150,000,000.

### C. Calculation of Loss

21.     The Policy section entitled "Calculation of Loss – Gross Revenue" provides that Losses covered under Section I (Show Cancellation) shall be determined as "the greater of":

 i. the loss of Gross Revenue that would have been received in the absence of the covered loss, whether or not the insured is obligated by contract or otherwise to return such Gross Revenue, plus the insured's loss from Commitments, less recoveries and any Expenses not incurred. Pro-rata return of any part of Gross Revenue in connection with a Show shall be considered as loss of Gross Revenue; or

 ii. the total of Expenses incurred plus loss of Commitments, less any recoveries, and less Gross Revenue retained after refunds; and

 iii. and with respect to (i) and (ii) above the reasonable cost incurred, agreed, or committed by the Insured as the Insured deems appropriate to avoid, diminish, or mitigate the extent, scope or possibility of a loss including costs to reschedule and or remarket a Show. Such costs include but are not limited to: extra expense, transportation, accommodation, Commitments, incentives, advertising, promotion, marketing and public relations Expenses. The cost of such action is in addition to the limit of liability.

### D. Extensions of Coverage

22.     The Policy provides that "[s]ubject to a limit of indemnity of $1,000,000 insurers agree to provide automatic coverage for up to 90 days for any newly organized or acquired Show(s). The Insured will provide insurers with the specifics of the new Show and coverage shall be scheduled and a premium charge made at the agreed composite premium rate evidenced on the Declarations page."

### E. Exclusions

23.     The Policy provides that "[t]his insurance does not cover loss arising directly or indirectly as a result of," among other things:

> Circumstances existing prior to the inception of this insurance known by the Insured that could result in a loss unless the Insured had advised [USSIC] of such circumstance and the Company accepted the risk by endorsement attached hereto and that any additional premium required has been paid by the Insured. For the

purposes of this exclusion, Insured means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

### IV. Gartner Requests Reinstatement

24. On April 16, 2020, Aon submitted a request from Gartner for reinstatement of the Limits of Indemnity under the Policy. Gartner has asserted that it is entitled to reinstate Limits of Indemnity with respect to cancelled or postponed Shows, and to use those limits for claims on separate and unrelated Shows, consequently increasing coverage for its COVID-19 related losses such that they would exceed the Policy's Aggregate Limit of Indemnity.

## CAUSES OF ACTION

25. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

26. USSIC and Gartner are interested parties under the Policy. An actual case or controversy exists between the parties (a) whether, under the circumstances set forth above, Gartner is entitled to reinstate coverage under the terms, conditions, and exclusions of the Policy to cover COVID-19 related losses, and if it is, how much coverage Gartner is entitled to reinstate; (b) whether Gartner is entitled to increase Limits of Indemnity for Recurring Shows to recover for COVID-19 losses; and (c) whether Gartner is entitled to add coverage for new events to recover for COVID-19 losses.

27. Accordingly, pursuant to 28 U.S.C. § 2201, *et seq.*, USSIC respectfully requests that this Court issue the following judicial declarations to terminate the uncertainty or controversy giving rise to this proceeding.

## COUNT I
------
## LIABILITY UNDER THE POLICY FOR COVID-19 PANDEMIC-RELATED LOSSES MAY NOT EXCEED THE AGGREGATE LIMIT OF INDEMNITY OF $20,000,000 IN ALL

31. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

32. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

33. Item 8 of the Declarations states that the Aggregate Limit of Indemnity for each period of coverage is $20,000,000 "in all." Only one provision of the Policy permits Gartner to increase the Aggregate Limit of Indemnity, subject to a known-conditions limitation. Paragraph 9 of the General Conditions and Warranties provides:

> Insured can apply in writing for increased indemnity limits based upon revised financial estimates of Gross Revenues, Expenses or Commitments, provided that there is no circumstance(s) known by the insured which may give rise to a claim with respect to such Show or Shows declared to this insurance. . . . It is further agreed that any such change in value will automatically cause an increase in the Aggregate Limit of Indemnity as evidenced by Item 8 on the Declarations page.

Thus, the Policy permits an increase of the Aggregate Limit of Indemnity *only* to the extent that Gartner has requested an increase of limits in writing based on revised financial estimates for a covered Show.

34. But even if Gartner made such a request (it has not), Gartner cannot deny that it knows of a circumstance—the global COVID-19 pandemic—which may give rise to a claim for cancellation of a Show.

35. The above provision is clear that the parties did not intend the Policy to permit an increase in limits to cover additional claims arising from a circumstance already known to the

insured at the time it requests such an increase. Accordingly, Gartner cannot seek an increase in the Aggregate Limit of Indemnity to cover for losses resulting from the COVID-19 pandemic.

36. Unlike Paragraph 9 of the General Conditions and Warranties, Paragraph 12 does not provide a basis for increasing the Aggregate Limit of Indemnity above $20,000,000. Paragraph 12 speaks exclusively in terms of reinstating liability limits for "a Show." The provision obligates USSIC only to "reinstate that part of the Limit of Indemnity shown in the Schedule utilized by way of any potential or actual loss payment under this Insurance at the sole option of the Insured." The clear intention of the provision is to reinstate the Limit of Indemnity for a scheduled Show in the event that "potential or actual loss payment" has eroded that limit and circumstances require Gartner to reinstate the limit.

37. Further, even if paragraph 12 were relevant here, because Gartner has not provided preliminary claim information necessary to evaluate the potential amount of each claim, the provision has not been triggered and Gartner's request for reinstatement is premature.

38. USSIC is entitled to a declaration that the Aggregate Limit of Indemnity for COVID-19 related losses is $20,000,000.

39. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

**COUNT II**
------
**GARTNER CANNOT INCREASE LIMITS OF INDEMNITY FOR LOSSES ARISING FROM THE COVID-19 PANDEMIC**

40. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

41.     The known loss rule is a principle of insurance which states that coverage may not be obtained for a loss that has already occurred or is certain to occur and/or that is known to the person seeking to obtain the coverage.

42.     The fortuity doctrine similarly holds that insurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur.

43.     The Policy contemplates that Gartner cannot increase Limits of Indemnity for a loss that already has occurred or is in progress. For instance, Condition 9 provides that:

> At any time prior to commencement of a Show or Shows the Insured can apply in writing for increased indemnity limits … provided that there is no circumstance(s) known by the insured which may give rise to a claim with respect to such Show or Shows declared to this insurance. Insured as used herein means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

44.     This provision makes clear that USSIC did not intend the Policy to permit an increase in Limits of Indemnity to cover additional claims arising from a circumstance already known to the insured at the time the insured requests an increase.

45.     Permitting Gartner to obtain increased coverage for a loss in progress would be contrary to public policy and the fortuity doctrine, which does not permit an insured to purchase or benefit from an insurance policy if the insured knew or expected a loss to occur. These principles apply to both Gartner's request to reinstate the Policy and its request for increased Limits of Indemnity for Recurring Shows in the 2020 Schedule of Events.

46.     With respect to Gartner's reinstatement request, even if Paragraph 12 of the General Conditions and Warranties could be read to entitle Gartner to reinstate and thereby somehow increase the Aggregate Limit of Indemnity of $20,000,000—which it cannot—Condition 12 is nevertheless subject to Exclusion 2(b), which excludes any loss resulting from

> [c]ircumstances existing prior to the inception of this insurance known by the Insured that could result in a loss unless the Insured had advised the Company of such circumstances and the Company accepted the risk by endorsement attached

hereto and that any additional premium required has been paid by the Insured. For the purposes of this exclusion, Insured means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

47. As coverage under the requested reinstatement has not incepted, and the COVID-19 pandemic is well known to Gartner, reinstatement is not available under Condition 12 to cover cancellations due to the pandemic.

48. USSIC is entitled to a declaration that Gartner cannot increase Limits of Indemnity for losses arising from the COVID-19 pandemic.

49. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

## COUNT III

### GARTNER CANNOT ADD COVERAGE FOR NEWLY ORGANIZED SHOWS TO RECOVER FOR LOSSES ARISING FROM THE COVID-19 PANDEMIC

50. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

51. The known loss rule is a principle of insurance which states that coverage may not be obtained for a loss that has already occurred or is certain to occur and/or that is known to the person seeking to obtain the coverage.

52. The fortuity doctrine similarly holds that insurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur.

53. While the Policy contemplates that Gartner could seek to obtain additional coverage for Newly Organized Shows under the Policy (contingent on the payment of additional premiums), coverage for these shows does not incept until the risk is accepted. Since COVID-19 is a known risk, Gartner's request for coverage of new events is subject to Exclusion 2(b), which excludes any loss resulting from

[c]ircumstances existing prior to the inception of this insurance known by the Insured that could result in a loss unless the Insured had advised the Company of such circumstances and the Company accepted the risk by endorsement attached hereto and that any additional premium required has been paid by the Insured. For the purposes of this exclusion, Insured means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

54. As coverage for the new events identified on Gartner's 2020 Schedule of Events has not incepted, and the COVID-19 pandemic is well known to Gartner, coverage for these Shows is subject to a COVID-19 pandemic exclusion.

55. USSIC is entitled to a declaration that Gartner cannot add coverage for new events to recover for losses resulting from the COVID-19 pandemic.

56. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

## PRAYER

WHEREFORE, USSIC respectfully requests that the Court enter a judgment:

a) declaring that reinstatement of Policy Limits of Indemnity cannot exceed the Aggregate Limit of Indemnity to recover for losses arising from the COVID-19 pandemic;

b) declaring that Gartner cannot increase Limits of Indemnity for losses arising from the COVID-19 pandemic;

c) declaring that Gartner cannot add coverage for new events to recover for losses resulting from the COVID-19 pandemic;

d) awarding USSIC its attorneys' fees and costs to the extent allowed by law; and

e) awarding all other and further relief as the Court deems just and proper.

Dated:   May 27, 2020

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ Gerard G. Pecht*
Gerard G. Pecht
gerard.pecht@nortonrosefulbright.com
Sumera Khan
sumera.khan@nortonrosefulbright.com
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246

Daniel McNeel Lane, Jr.
neel.lane@nortonrosefulbright.com
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone:     (210) 224-5575

*Attorneys for Plaintiff USSIC*